# KILBOURN *v.* HIRNER.

---

PATENTS; INTERFERENCE.

1. The decisions of the expert tribunals of the Patent Office as to the sufficiency of the disclosure by an applicant to support the claims made the issue of an interference will be accepted by this court as conclusive, except in extreme cases where palpable error has been committed.   (Following *Seeberger* v. *Dodge,* 24 App. D. C. 481, and *Podlesak* v. *McInnerney,* 26 App. D. C. 405.)

D. C.]                           Opinion of the Court.

2. Where, in an interference case involving an automatic stocking knitting
   machine, the junior party, more than a year after the declaration
   of interference, for the first time objected to the senior party's appli-
   cation, on the ground that it neither showed nor described narrowing
   and widening devices for making the heel and toe of the stocking,
   such an objection, considered and held to be untenable by all the
   tribunals of the Patent Office, will not be allowed to disturb an
   award of priority to the senior party, where it appears that the latter
   was highly skilled in the art when he filed his application; that the
   machine therein described of necessity comprised narrowing and
   widening mechanism; that one of the figures of the attached drawing
   would be recognized by anyone skilled in the art as belonging to an
   automatic machine having narrowing and widening devices, and that
   other parties to the interference did not question the sufficiency of the
   application.

No.  383.   Patent Appeals.   Submitted January  10,  1907.   Decided
                         February 5, 1907.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.        *Affirmed.*

The facts are stated in the opinion.

*Messrs Whitaker & Prevost* for the appellant.

*Mr. Charles L. Sturtevant, Mr. Henry N. Paul, Jr.,* and
*Mr. Joseph C. Fraley* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of
Patents in an interference case involving an automatic stocking
knitting machine.

The assignment of error relied upon in argument challenges
the ruling that appellee has the right to claim in his application
in interference the subject-matter in issue.   The counts of
the issue follow:

"Count 1. In a circular knitting machine having independent
needles and means for narrowing and widening the back of the

knit tube, means for knitting open work and plain knitting at any point around the said tube, and means for changing the open work on the back of the tube to plain knitting.

"Count 2. In a circular knitting machine having independent needles, cam mechanism to co-operate with all of said needles, to produce tubular work, to co-operate with each needle, of a continuous portion of said needles to form narrowed and widened fabric, and to operate certain needles of said portion without causing them to knit, thereby forming drop-stitch work."

Emil A. Hirner is the senior party, having filed his application July 5, 1901. Edward E. Kilbourn filed his application December 16, 1902, more than seventeen months later. An interference was declared November 3, 1903, and then involved, in addition to the applications of the parties hereto, the application of Sylvester J. Kutz, filed May 1, 1902, the application of John B. Hipwell, filed June 3, 1902, and the application of John C. Duemler, filed July 19, 1902. Kutz, Hipwell, and Duemler took no testimony, and, being junior parties, their failure in that respect resulted in their applications being eliminated from further consideration. Hirner and Kilbourn each proceeded to take testimony on the question of priority. Subsequently a hearing was had before the Examiner of Interferences, who, in a carefully considered opinion, awarded judgment of priority to Hirner. During the argument before the Examiner, counsel for Kilbourn for the first time, as far as the record discloses, raised the question whether Hirner's application contains a sufficient basis for the claims in interference. This question was also carefully considered by the Examiner, and his ruling thereon sustained Hirner. An appeal was taken to the Examiners-in-Chief, who affirmed the decision appealed from. The case was then taken to the Commissioner, who, without deciding the question of priority, remanded the proceeding to the Primary Examiner, saying: "No motion for dissolution was made by Kilbourn, and no statement upon the record appears to have been made by the Primary Examiner of his reasons for holding that the issues are properly grounded upon

Hirner's disclosure. The machines upon which the issue is drawn and those of the prior art are complex and intricate and their operation involved. The Primary Examiner is the technical expert of this office as to those arts in which he examines. He should, through his special experience, be peculiarly fitted to determine the meanings of the terms used in the specification of the parties, and to determine the relations of their disclosures to prior devices. I am unwilling to pass upon the question of disclosure by Hirner without the benefit of the opinion and the reasons of the Primary Examiner, based upon discussion of the question by the parties in case they desire to be heard. The interference is remanded to the Primary Examiner, who will hear the parties and furnish me with his opinion as to the question raised, together with a statement of the reasons for his conclusion." Thereupon the Primary Examiner heard counsel for both parties, considered the question submitted to him, and furnished the Commissioner with an elaborate opinion, saying in conclusion: "The Examiner is of the opinion that Hirner's showing is sufficient to support his right to make the claims made the issue of the interference, and it is so held." Thereupon the Commissioner rendered a final decision, in which he said: "The Primary Examiner heard the parties and has rendered his opinion, which is now before me. He has given a clear and fair discussion of the facts, and concluded, as did the Examiners-in-Chief and Examiner of Interferences, that Hirner's disclosure justified the claims in issue. After careful consideration, I am convinced that the unanimous conclusion expressed by the three opinions which have been written upon the sufficiency of Hirner's disclosure is sound."

The reasons that impelled the Commissioner to seek the opinion of the Primary Examiner on the question here involved have heretofore impelled this court to announce the rule that the decisions of the expert tribunals of the Patent Office on such a question will be accepted as conclusive, except in extreme cases where palpable error has been committed. *Seeberger* v. *Dodge,* 24 App. D. C. 481; *Podlesak* v. *McInnerney,* 26 App. D. C. 405.

We see nothing unusual or extreme in this case, unless it be the failure of appellant to discover what he now urges as an obvious and fundamental defect in Hirner's application, until more than a year after the declaration of interference. Unless, therefore, a manifest error has been committed, the judgment must be affirmed.

The specific objection to the Hirner application is that it neither shows nor describes narrowing and widening devices for making the heel and toe of the stocking. The record discloses that at the time Hirner made this application he was, and for a long time had been, a prolific inventor as well as a manufacturer of circular knitting machines. It also discloses that he himself had invented and patented machines containing narrowing and widening devices. It is apparent, therefore, that he was highly skilled in the art when he filed this application. The Examiner of Interferences, after quoting from Hirner's application, says: "It seems quite apparent from Hirner's specification that the machine described therein is the ordinary stocking knitting machine, in which not only the leg portion, but the heel and toe portions of the stocking are made. Of necessity such a machine must comprise narrowing and widening mechanism. This, indeed, is well known in the art. To say that a complete stocking is produced upon a knitting machine means, to one skilled in the art, that such a machine contains the ordinary narrowing and widening mechanism. It is believed that Hirner's specification contains a sufficient basis for the present claims." The Examiners-in-Chief "find that Fig. 10 of the application of Hirner discloses device lettered F, and a shape of the upper portion of device E, which are provisions for the guidance of pickers for automatically operating the needles to effect narrowing and widening. In short, this figure of the drawing clearly so shows a part of the machine as to make the machine one having automatic narrowing and widening mechanisms. Also, the entire specification of Hirner is drawn to indicate that all of the operations are automatically performed by the machine, excepting in one instance, where it states that the cam N may be operated either automatically or

by hand. Furthermore, at the date of Hirner's application, Hirner, an inventor and manufacturer of circular knitting machines, cannot be presumed to have presented an improvement on merely the very old type of machines wherein the narrowing and widening was done by hand operation of needles and the cylinder, but rather on one of the then more modern automatic narrowing and widening machines, with which he must have been well acquainted." The Primary Examiner, to whom the question was then referred, says, *inter alia:* "It is fundamental knowledge in this art that the heel, sole, and toe of a stocking knit of solid fabric can be produced only upon a continuous series of needles having no omissions therein. It is also fundamental knowledge in this art that the heel and toe pockets of a stocking can be made upon a circular machine (the product of which is a 'seamless' stocking), only by widening and narrowing the fabric to form said pockets.

*          *          *          *          *          *

The showing comprised in Hirner's Fig. 10 appears to the Examiner to be alone sufficient to entitle Hirner to make in this case claims to the combination of the particular devices clearly shown in the application, with 'means for narrowing and widening the back of the knit tube' or 'cams to co-operate with each needle of a continuous portion of said needles to form narrowed and widened fabric.' The cam shown in Fig. 10, apparently an accurate drawing of the inner surface of the cam cylinder of the actual machine made by Hirner, is most distinctive in its design, and would be recognized by anyone skilled in this art as belonging to an automatic knitting machine having narrowing and widening devices. The configuration of the cams D and E, particularly of the upward inwardly sloping surfaces, which are shown as containing recesses, would be wholly useless in any other type of machine. The recesses mentioned are for the purpose of accommodating the narrowing pickers when in position for action. See in this connection Fig. 2 of Hirner's prior patent No. 471,220, March 22, 1892 (Knitting and Netting, Circular Machines, Independent Needles, Fashioning), and his patent No. 753,260, March 1,

1904 (Circular Machines, Independent Needles), wherein a cam cylinder is similarly conventionally shown with the same recesses, and his patent No. 686,070, November 5, 1901, wherein see particularly Fig. 2 and Fig. 13, and the narrowing pickers $E^2$ shown in said figures."

The Commissioner, as before stated, accepted and approved the finding of the Primary Examiner, saying: "In Hirner's specification as filed, however, reference is made to ordinary stocking knitters, and to a cam which, when controlled by proper mechanism, may be used as a pull-down cam to lower the needles after knitting a heel or toe pocket, and also to cams which may be used in conjunction with other mechanism at the commencement of the formation of the heel and toe pockets as needle-raising cams. These references, in view of the general use of pickers upon stocking knitters, would, it is believed, unmistakably inform those skilled in the art that the devices shown by Hirner are to be used in practice with the usual pickers for widening and narrowing."

We have carefully examined and considered this record, and find no sufficient basis therein for disturbing the conclusion thus carefully reached by the successive tribunals of the Patent Office. The parties, Kutz, Hipwell, and Duemler, each senior to Kilbourn, and each presumably skilled in the art, did not question the sufficiency of Hirner's application, and Kilbourn himself failed to discover any defect therein until the testimony had been taken which convinced the Patent Office that Hirner was entitled to a judgment of priority.

Without considering the question further, we affirm the decision of the Commissioner, and it is so ordered.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, as required by law.          *Affirmed.*